UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHRISTOPHER LEE REMILLARD,

   Plaintiff,

v.

THE CHARLES MACHINE WORKS, et al.,

   Defendants.

Case No. 23-cv-02639-RS

**ORDER DENYING MOTION TO REMAND**

# I. INTRODUCTION

Plaintiff Christopher Lee Remillard filed this putative wage and hour class action in Sonoma County Superior Court, raising nine state law claims for relief. Defendants then removed under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Plaintiff has moved to remand on the grounds that Defendants have not shown CAFA's $5 million amount-in-controversy requirement is satisfied. This motion is suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b), and for the reasons discussed below, it is denied.

# II. LEGAL STANDARD

CAFA provides federal court jurisdiction over class actions where three requirements are satisfied: (1) "the class has more than 100 members"; (2) "the parties are minimally diverse"; and (3) "the amount in controversy exceeds $5 million." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014) (citing 28 U.S.C. § 1332(d)). As with the typical case, the amount in controversy "is simply an estimate of the total amount in dispute, not a prospective

assessment of [the] defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). It is, in other words, "the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). This amount includes "attorneys' fees awarded under fee-shifting statutes or contracts." *Id.* (quoting *Fritsch v. Swift Transp. Co. of Ariz.*, 899 F.3d 785, 794 (9th Cir. 2018)).

If the complaint states an amount in controversy that exceeds $5 million, a defendant may rely on this figure to invoke federal jurisdiction under CAFA. *See Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197–98 (9th Cir. 2015). However, if the complaint "does not assert the amount in controversy, or . . . affirmatively states that the amount in controversy does not exceed $5 million," it is the defendant's burden "to put forward evidence showing that the amount in controversy exceeds $5 million, . . . and to persuade the court that the estimate of damages in controversy is a reasonable one." *Id.* The notice of removal itself need only include "plausible allegations of the jurisdictional elements," rather than evidentiary submissions. *Arias*, 936 F.3d at 922. When jurisdiction is challenged in a motion to remand, both sides may submit proof and the district court determines whether the defendant has shown the amount in controversy is met by a preponderance of the evidence. *Ibarra*, 775 F.3d at 1198–99. In doing so, "a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions'"; however, these assumptions "cannot be pulled from thin air but need some reasonable ground underlying them." *Arias*, 936 F.3d at 925 (quoting *Ibarra*, 775 F.3d at 1198–99).

### III. DISCUSSION

Plaintiff's concise motion argues that Defendants have failed to prove, by a preponderance of the evidence, that the amount in controversy here exceeds $5 million. Though the Notice of Removal included calculations (rather than bare assertions of the amount in controversy), Plaintiff contends these were all based on unreasonable assumptions "that are unsupported by the allegations in the Complaint or by the evidence." Dkt. 14, at 4. The Notice of Removal provided damages estimates for six of the nine claims for relief, as well as for attorney fees; those estimates are summarized in the table below. *See* Dkt. 1 ¶¶ 22–50. It did not include estimated damages for

Claims 5, 7, and 9, nor did it include potential liquidated damages. Defendants calculated these figures based on employee data, as described in a declaration provided by one of the Defendant's employees. *See* Dkt. 1-3. For instance, between October 3, 2018, and the date of the Notice of Removal, there were "at least 642 employees in California who worked approximately 88,420 workweeks" with an average hourly salary of $20.86. *Id.* ¶ 22. They also rely on the estimated number of workers whose employment was separated from October 3, 2019, onward, and the number of wage statements issued from October 3, 2021, onward. *Id.* ¶¶ 23–24.

| Damages Category | Damages Amount | Method of Calculation |
| --- | --- | --- |
| Unpaid Minimum Wages (Claim 1) | $1,844,863 | One unpaid hour/week |
| Unpaid Overtime Wages (Claim 2) | $2,766,295 | One unpaid hour/week |
| Unpaid Meal Period Premiums (Claim 3) | $1,844,863 | 20% violation rate (one meal period violation/week) |
| Unpaid Rest Period Violations (Claim 4) | $1,844,863 | 20% violation rate (one rest period violation/week) |
| Wage Statements (Claim 6) | $1,515,300 | All wage statements |
| Waiting Time Penalties (Claim 8) | $1,046,683 | 30-day penalty based on daily wage rate |
| **Subtotal** | **$10,863,868** | |
| Attorney Fees | $2,715,967 | 25% of subtotal |
| **TOTAL** | **$13,579,835** | |

Reviewing the available evidence, Defendants' calculations are all based on reasonable assumptions. It should be noted at the outset that the Complaint describes what courts in the Ninth Circuit have typically referred to as a "pattern and practice of labor law violations," meaning that while violations have occurred, they did not necessarily occur "every time the wage and hour violation could arise." *Ibarra*, 775 F.3d at 1199; *see, e.g.*, *Dobbs v. Wood Grp. PSN, Inc.*, 201 F. Supp. 3d 1184, 1188–89 (E.D. Cal. 2016). For example, it clearly states that "Defendants engaged in a systematic pattern of wage and hour violations" and that they "systematically engaged in unlawful conduct." Dkt. 1, Ex. A ¶¶ 3, 101. As such, it would generally be inappropriate for

Defendants to rely on an assumed 100% violation rate. *Dobbs*, 201 F. Supp. 3d at 1189. However, despite Plaintiff's assertions to the contrary, that is not what Defendants have presented.

With respect to unpaid minimum wages and overtime wages, Defendants rely on an assumption that only one hour per week was not compensated at the correct rate[1] — "a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations." *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (citing *Arreola v. Finish Line*, No. 14-cv-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014)). Similarly, the reliance on a 20% violation rate for meal period and rest period violations has been permitted where the complaint, as here, "does not specify the frequency of the alleged missed meal or rest periods." *Chaves v. Pratt (Robert Mann Packaging), LLC*, No. 19-cv-00719-NC, 2019 WL 1501576, at *3 (collecting cases); *see Kastler*, 2019 WL 5536198, at *5. Granting that the damages estimates for these four claims are sound, Defendants have already cleared the $5 million threshold (to wit, $8,300,884).

Since the estimates for these four claims are credible, the wage statement estimate is credible as well, because any one of the four violations in a given week would render the wage statements incorrect. Defendants' choice to rely on the maximum waiting time penalties for the 229 separated employees was similarly reasonable. *See Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) ("[I]t was not unreasonable for [the defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty."). Finally, though Plaintiff is partially correct that the Ninth

---

[1] In his Reply, Plaintiff argues that Defendants' overtime calculations rely on an unasserted "off-the-clock" theory, rather than simply that employees were undercompensated. *See* Dkt. 18, at 4. As this argument was not included in the motion, it need not be considered here. *See Nathanson v. Polycom, Inc.*, No. 13-3476 SC, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) (collecting cases). Even if it were factored in, and the damages estimates reduced, Defendants' proffered amount in controversy more than meets the $5 million requirement.

Circuit has rejected a *per se* rule that attorney fees be calculated at 25% of the damages total for the purposes of the amount in controversy, *see Fritsch*, 899 F.3d at 796, it has not held that such a figure is *per se* unreasonable. Indeed, many courts typically rely on such a figure based "on their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Id.* at 795; *see Kastler*, 2019 WL 5536198 at *7. Here, reducing the attorney fee award to 20%, or 15%, or even nothing at all, would not change the calculus, because the damages estimates alone readily surpass $5 million.[2]

Plaintiff's motion attempts to poke holes in Defendants' calculations by describing them as speculative and unsubstantiated. However, it is Plaintiff's own attacks that are cursory and conclusory. The motion is unaccompanied by any declaration or any "alternative violation rate grounded in real evidence." *Ibarra*, 775 F.3d at 1199. Plaintiff does not suggest what a more accurate amount in controversy would look like, and it is not the Court's job to fill in the blanks. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020). While the Supreme Court has instructed district courts to weigh the parties' proof once jurisdiction has been challenged, *see Dart*, 574 U.S. at 88, there is no competing proof to weigh here. In addition, Plaintiff points repeatedly to the Ninth Circuit's admonition that defendants cannot "pull violation rates out of thin air," but this refrain cannot sustain the weight Plaintiff places on it. At this early stage, with the scant information provided in the Complaint, it is just as arbitrary to select a 20% meal period violation rate, for example, as it would be to use a 10% rate or a 40% rate. Such arbitrary choices are to some extent unavoidable,[3] but that does not mean Defendants' estimates are inherently unsound. *See Jauregui*, 28 F.4th at 993. The bottom-line question is whether "the reasoning and underlying assumptions are reasonable," not whether the numbers are 100% accurate. *Id.*; *see also*

---

[2] For this reason, Plaintiff's argument that attorney fees are not recoverable for some of the violations alleged here need not be considered.

[3] In part for this reason, one district court in this Circuit has described the process of estimating an amount in controversy in CAFA cases as "a wasteful and silly, but routine, exercise in mathematical fantasyland." *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRx, 2019 WL 4254935, at *3 (C.D. Cal. Sept. 5, 2019).

*Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 965 (9th Cir. 2020). As concluded above, the answer to that question is yes.

### IV. CONCLUSION

Defendants' Notice of Removal provides a reasonable basis to conclude that the amount in controversy exceeds CAFA's $5 million requirement. The motion to remand is therefore denied.

**IT IS SO ORDERED**.

Dated: July 7, 2023

_____
RICHARD SEEBORG
Chief United States District Judge